```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

MELODY SMITH, et al.,      :
                           :   NO. 1:04-CV-00234
   Plaintiffs,             :
                           :   **OPINION AND ORDER**
                           :
   v.                      :
                           :
                           :
JUDY WILLIAMS-ASH,         :
                           :
   Defendant.              :

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 51), Plaintiffs' Memorandum in Opposition to Defendant's Motion (doc. 52), and Defendant's Reply Memorandum in Further Support of its Motion (doc. 53)[1].  For the reasons stated herein, the Court GRANTS Defendant's motion.

**I. Background**

   **A. Factual Background**

The facts in this case were detailed in a previous Order of this Court.  They are, for the most part, simply restated here.  On March 17, 2004 Richard Montifiore ("Montifiore") visited the home of Plaintiffs David and Melody Smith ("Plaintiff Parents") to check on Plaintiff Malake Dancer ("Malake") as part of the Hamilton

---

[1] The Defendant also filed Supplemental Authority in further support of her motion (doc. 54).  This brief was filed well out of time and need not be considered by the Court in reaching its conclusion.

County Job and Family Services' Kinship Program ("Kinship Program") (doc. 1). Malake is severely disabled (doc. 1). The Kinship Program is "a program to support ancillary services for care givers who are awarded legal custody of their relative children (the program also includes non-relatives who have familiar relationship with the child(ren))" (doc. 7). Montifiore determined that Plaintiff Parents' children should be removed from their home because of the home's state of uncleanliness (doc. 11). Montifiore also contacted the Springfield Township Police and ultimately, Parent Plaintiffs were charged with child endangerment, pursuant to Ohio Revised Code Section 2919.22, and were later convicted of that offense (doc. 7). Plaintiff Parents' children, Mari Katlyn and David, as well as Malake, are Plaintiffs in this case and will be referred to, collectively, as "Plaintiff Children."

Defendant Judy Williams-Ash, an employee of the Hamilton County Department of Jobs and Family Services ("HCDJFS"), pursuant to a "Safety Plan," removed the Plaintiff Children from the Plaintiff Parents' home and placed them with friends of Plaintiff Parents (doc. 1). The Safety Plan states "[y]our decision to sign this safety plan is voluntary" and provides:

> 1. This safety plan is a specific agreement to help ensure your child(ren)'s safety.
>
> 2. The custody of your child(ren) does not change under this safety plan.
>
> 3. Children's Services is here to help you protect your child(ren) when you may not be

> able to do it on your own.
>
> 4. If you cannot or will not be able to continue following the plan, Children's Services may have to take other action(s) to keep your child(ren) safe.
>
> 5. The safety plan will end when you are able to protect your child(ren) without help from Children's Services.
>
> 6. This safety plan may be changed if new or different services are necessary.
>
> 7. You must contact your caseworker immediately if you decide that you cannot or will not be able to continue following the plan (doc. 51).

The Safety Plan further states:

> What: Malake, David and Mari will remain in the care of the caregivers who have been identified (The friends previously identified above).
>
> Where and Who: Malake will be in the care of Amber and Tim Neff, David with Karen and Paul Lehn, Mari with Maria and Jerry Meyer (neighbors and friends of David and Melody Smith)
>
> How: Children are presently with caregivers. Melody and David will transport David to Karen and Paul Lehn. Melody and David will provide transportation for Children to and from school. Melody and David can take children out for activities with permission of caregivers. Children are not allowed to be in the home in or outside the premises (Id.).

Plaintiff Parents assert that they immediately cleaned up their home and contacted Defendant in an effort to have Plaintiff Children returned to them (doc. 1). Plaintiff Children were not immediately returned (Id.). Plaintiff Parents maintain they

-3-

repeatedly asked Defendant what they needed to do in order to have Plaintiff Children returned (Id.). Plaintiff Parents aver that Defendant responded by indicating that Plaintiff Parents "will do what [Defendant] tells them to do or [she] will see to it that [Plaintiff Parents] will lose [their] children and go to jail" (Id.). Plaintiff Parents also maintain that they were not given a hearing to determine the placement of Plaintiff Children and were not given any information on what was required of them to have the Plaintiff Children returned (doc. 11). Furthermore, Plaintiff Parents contend that they were never told by Defendant that the "Safety Plan" was voluntary (Id.). The Plaintiff Children were ultimately returned to Plaintiff Parents subsequent to the filing of this lawsuit (Id.).

### B. Procedural Background

Plaintiffs filed this action on March 30, 2004, claiming violations of their substantive and procedural due process rights (doc. 1). Defendant filed a motion for judgment on the pleadings, which was denied by this Court on November 23, 2004 (doc. 18). Defendant appealed the Court's decision on the issue of qualified immunity, and the Court of Appeals affirmed and remanded the case. In their decision, the Sixth Circuit held that while Defendant was not entitled to qualified immunity on Plaintiffs' claim of procedural due process, Defendant was entitled to qualified immunity on the substantive due process claim. Smith v. Williams-

Ash, 2005 U.S. App. LEXIS 26774 (6th Cir. 2005). Subsequently, Defendant filed the instant motion, seeking summary judgment on the remaining procedural due process issue (doc. 51).

**II. Applicable Legal Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party

seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879

-6-

F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).  Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits.  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted).  In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment.  See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).  The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H.

Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III. Analysis**

In her first argument in support of summary judgment, Defendant contends that Plaintiffs were not entitled to due process because the actions taken pursuant to the Safety Plan did not constitute a deprivation of any constitutional right (doc. 53). An individual is only entitled to procedural due process when she has suffered a deprivation of a constitutionally protected liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 569 (1972).

Recently, in Kottmeyer v. Maas, 436 F.3d 684 (6th Cir. 2006), the Sixth Circuit stated "[t]here is no doubt that under the constitution, the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of

law." Id. at 689 (citing Bell v. Milwaukee, 746 F.2d 1205, 1243 (7th Cir. 1984); Morrison v. Jones, 607 F.2d 1269, 1276 (9th Cir. 1979)).  The Sixth Circuit further noted that "[i]n Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion of O'Connor, J.), the Supreme Court described 'the fundamental right of parents to make decisions concerning the care, custody, and control of their children' as perhaps 'the oldest of the fundamental liberty interests recognized by this Court.'" Id.

However, the Court of Appeals found "[n]onetheless, what is clear is that the right to family integrity, while critically important, is neither absolute nor unqualified." Id. (citing Martinez v. Mafchir, 35 F.3d 1486, 1490 (10th Cir. 1994)).  The Sixth Circuit concluded that the rights of a parent must be counterbalanced with the government's interest in protecting a child. Id.  Ultimately, under the facts of that case, the Court of Appeals in Kottmeyer found that there had been no deprivation of the plaintiff's constitutional right because "[m]ere investigation by authorities into child abuse allegations without more, however, does not infringe upon a parent's right to custody or control of a child in the same manner." Id. at 691.  Defendant argues the conclusion in Kottmeyer is instructive to the circumstances of this case (doc. 51).  Defendant avers that because of the voluntary nature of the Safety Plan and because, under its own terms, the

-9-

Safety Plan does not constitute a change in the custody of the children, there was no infringement on Plaintiff Parents' rights to custody or control of Plaintiff Children (Id.).

The Court does not find Defendant's position well-taken. Kottmeyer clearly states "[a] parent is necessarily deprived of his or her right to custody and control of their child, either permanently or temporarily, when a child is removed from the home." 436 F.3d at 691. Although Defendant is correct that legal custody of Plaintiff Children was never terminated, there was a change, albeit temporary, in the children's physical custody. Pursuant to the Safety Plan, Plaintiff Children were removed from their home. This removal constitutes a loss of Plaintiff Parents' control over their children, and they were therefore entitled to due process of the law.

Defendant next argues that even if Plaintiffs were entitled to due process, the process they were afforded was adequate (docs. 51, 53). "Once it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). The Court considers three factors in determining whether Defendant has violated Plaintiffs' procedural due process rights. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). These three factors are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used

-10-

and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail" (Id.).

Under the first factor, the Court must consider the private interest of Plaintiffs affected by the removal of Plaintiff Children from their home. Although a parent's interest in the control and custody of their child cannot be questioned, it must be noted that Plaintiff Parents did not lose complete control over their children. Plaintiff Parents were able to decide who their children were placed with, and were able to continue to visit and care for their children as long as they did not do so in their own home (doc. 53). Further, the Safety Plan specifically states "[t]he custody of your child(ren) does not change under this safety plan" (Id.).

In considering the third factor, it is likewise unquestionable that the government has a strong interest in protecting children who are at risk. It is undisputed in this case that Plaintiff Children were endangered by the conditions of Plaintiff Parents' home (doc. 52).

Finally, under the second Mathews factor, the Court must consider the risk of erroneous deprivation through the procedures used. As the Court has previously stated, the state must provide

-11-

clear and effective procedures in ensuring that a parent's interest in their children is not unduly obstructed (doc. 18.) Plaintiffs do not challenge the initial decision to implement a Safety Plan (doc. 52). However, Plaintiffs complain that Defendant obstructed their efforts to regain control of their children by not providing them with information about how to terminate the Safety Plan, not informing them about the voluntary nature of the plan, and not affording them a hearing to determine the placement of their children (doc. 52). The question for the Court is therefore whether the process provided to Plaintiffs was clear and effective, taking into account the allegedly obstructive actions of Defendant.

Under O.A.C. § 5101:2-34-37 (2001), which was promulgated pursuant to O.R.C. § 2151.421 (West 2005), a Safety Plan for Children is to be implemented by a children services agency such as HCDJFS once it is determined that there is imminent risk of harm to a child. Further, this provision provides that the children services agency "shall implement other safety measures when a responsible person is unwilling to sign" the Safety Plan. O.A.C. § 5101:2-34-37(F).

The Safety Plan signed by Plaintiff Parents clearly states that "your decision to sign this safety plan is voluntary" (doc. 53). As detailed in Part I of this Order, the Safety Plan states that there is no change in the custody of the children, that the plan ends when the parents are able to protect their children

without help from Children's Services, and that the parents must notify their caseworker if they want to withdraw from the Safety Plan (doc. 53). Therefore, even taking Plaintiffs' allegations about the statements and conduct of Defendant as true, Plaintiff Parents were provided information in writing about the voluntariness of the Safety Plan and what to do if they wished to terminate the plan.

Further, Plaintiffs' complaint that their due process rights were violated because they were not afforded a hearing is not well-taken. Under O.R.C. § 2151.31(E), a probable cause hearing is required if an emergency custody order is sought. Here, instead of seeking a custody order, Defendant secured a voluntary Safety Plan that did not effect Plaintiff Children's custody status. Therefore, no hearing was required. Had Plaintiff Parents sought to withdraw from the Safety Plan and had Defendant sought a custody order, then Plaintiffs would have been entitled to a hearing. However, Plaintiff Parents do not contend that they sought to withdraw from the Safety Plan (doc. 52).

It should be noted in its Order denying Defendant's motion for judgment on the pleadings, the Court stated that further procedures might be necessary to ensure a fair process (doc. 18). However, in light of the Ohio law that guided the creation of the Safety Plan, as well as the specific provisions of the plan itself, the Court finds that, in fact, Plaintiffs were provided a clear and

-13-

effective process.

Defendant contends that the totality of these factors demonstrate that "the Safety Plan is a fair balance of the public and private interests at stake" and "is the least restrictive and least disruptive means to assure the safety of children who have determined to be at risk of child neglect" (doc. 53). The Court agrees with Defendant's assessment and finds that Plaintiffs were afforded the process they were due. Given this conclusion, the Court need not reach Defendant's arguments that she is entitled to qualified and absolute immunity.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment (doc. 51) and this case is hereby DISMISSED, with prejudice.

SO ORDERED.

Dated: December 14, 2006          s/S. Arthur Spiegel
                                  S. Arthur Spiegel
                                  United States Senior District Judge